[In Bank.—July 24, 1883.]

## EX PARTE E. MARKS ON HABEAS CORPUS.

HABEAS CORPUS—PARDON.—Where a prisoner has been granted a pardon by the governor on condition that he forthwith leave the State and never return to it, he is not entitled to a discharge from rearrest on habeas corpus. it appearing that he did not accept the pardon in good faith, and that after his release from prison, and before his rearrest, ample opportunity was given him to leave the State, of which he did not avail himself.

APPLICATION for habeas corpus.  The facts are stated in the opinion of the court.

*Holl & Buckley*, for Petitioner.

*Hart & White, contra.*

Ross, J. — The petitioner, who was undergoing imprisonment in the State prison under judgment of conviction of the crime of murder in the second degree, was, by the governor of the State, granted a pardon upon condition that he forthwith leave the State and never return thereto.  The governor, it seems, was induced to grant the pardon upon representations made to him to the effect that the prisoner was partially idiotic, that his parents resided in Poland and would take care of him if permitted to go to them, and that he had brothers of wealth in this State who would furnish him with the means necessary to take him there and would thereafter provide for his support.  The pardon was given by the governor to the warden of the prison to be by him delivered to the prisoner, whenever the same was properly accepted.  Upon its receipt the warden tendered the pardon to the prisoner, who refused to accept it unless it should be stipulated that he should be permitted to remain in the State for the period of eighty days after his discharge from the prison.  The result of course was that he remained incarcerated.  Some weeks afterward he indicated to the warden — who, meanwhile, had retained the pardon in his possession — his willingness to accept it and to faithfully perform the conditions upon which it was granted.  Upon this representation and upon the prisoner's promise to leave the State on the train going east the following evening, the warden handed him the pardon and released him from custody.  His brothers thereupon offered him sufficient funds to take him to his parents in Poland, but he refused to go as he had promised, but declared his intention to remain in California unless his brothers gave him one thousand dollars.  Thereupon he was again taken into custody by the warden, and now claims the right to be discharged on habeas corpus.

We think it clear that he is not entitled to be so discharged.  There is no doubt that the governor was authorized to grant the pardon upon the conditions stated, for he is by the Constitution

empowered to make such grants "upon such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons." (§ 1, art. vii., Constitution.)

The pardon in question contained two conditions — one, that the prisoner should forthwith leave the State; the other, that he should never return to the State. The one was a condition precedent, the other, a condition subsequent. That is to say, the governor in effect said to the prisoner: By virtue of the power vested in me by the Constitution I exempt you from the punishment the law inflicts for the crime you have committed, *provided*, you forthwith leave the State, and *provided, further*, you never return to the State. Until he actually leaves the State the pardon does not become operative at all. This must be so from the very nature of the first condition attached to it. When that condition· is performed, the pardon becomes operative, but it nevertheless remains subject to be defeated by the breach of the condition subsequent, to wit, by the prisoner's subsequent return to the State. (1 Bishop on Criminal Law, § 760; *Ex parte Wells*, 18 How. 311; *State* v. *Smith*, 1 Bail. 283; *Lee* v. *Murphy*, 22 Gratt. 789; *Flavell's Case*, 8 Watts & S. 197.) The pardon, therefore, never having taken effect, it results that the prisoner is not entitled to his discharge. It is no answer to say that the pardon was *delivered* to the prisoner. Apart from what has been already said, delivery of such an instrument is not complete without an acceptance in good faith. The *bad* faith of the prisoner was demonstrated almost as soon as he got out of prison. Besides, the pardon was given to the prisoner by the warden upon the distinct agreement on his part to leave the State on the train going east the following evening. The subsequent conduct of the prisoner showed that he had no intention of doing any such thing. A pardon obtained by misrepresentation amounting to fraud is void. (1 Bishop on Criminal Law, §§ 753, 754.) Nor is there any force in the suggestion that in such cases the person pardoned may be deprived of the opportunity to comply with the conditions of the pardon. No court has the power to compel any executive officer to afford the person to whom a pardon has been conditionally granted an opportunity to comply with the conditions, for that would be to

exercise the pardoning power in part. When the pardon has once taken effect, then the party to whom it is extended acquires a right which the courts can, and will, of course, protect. There is no reason, however, to suppose that in any case any executive officer would refuse to afford the party to whom a conditional pardon should be granted, an opportunity to comply with the conditions, and thereby secure its benefits. Every presumption is the other way. Should the fact be otherwise in any case, perhaps some means might be discovered for giving effect to the governor's power. At all events, in the present case, ample opportunity was given the prisoner, which, instead of availing himself of, he abused.

Let the prisoner be remanded to the custody of the warden.

Sharpstein, J., Myrick, J., and Thornton, J., concurred.